IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA K. FISHERING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge Der-Yeghiayan |
| v. ) | Case No. 07 C 6650 |
| ) | |
| CITY OF CHICAGO, JAMES SPRATTE, ) | Magistrate Judge Nolan |
| TERANCE NALLS and EUGENE WHITE, ) | |
| ) | |
| Defendants. ) | |

## EUGENE WHITE'S MOTION TO COMPEL

Defendant Eugene White ("White"), by and through his attorneys, moves the Court pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel Plaintiff Lisa K. Fishering to produce all bank account records and credit card statements for the period of October 2006 to the present. In support of the motion, White states as follows:

1. Fishering filed a three count complaint arising out of her arrest by the Chicago Police Department for felony theft by deception. (Complaint, ¶ 16). Fishering was arrested after she took approximately $55,000 from White under false pretenses, and without providing any goods or services in return for the monies.

2. Counts I and II of Fishering's Complaint are brought against defendants City of Chicago, James Spratte and Terance Nalls. In Count III of her complaint, Fishering purports to bring a state law claim of defamation *per se* against White. Fishering's claim for defamation *per se* is based solely upon paragraph 13 of her Complaint. Specifically, Fishering alleges in paragraph 13 that "[o]n or about September 17, 2007, [White] left a voicemail message with a business associate

255400v1

of plaintiff stating that plaintiff had taken $45,000 and "skipped town" and that a warrant had been issued for her arrest on fraud charges." (Complaint, ¶ 13).

3. White has filed his Answer and Counterclaim. (*See* White's Answer and Counterclaim, attached hereto as Exhibit 1). In his Answer, White denies that he is liable for defamation, and has affirmatively stated that everything that he said was absolutely true.

4. In his Counterclaim, White has alleged claims for breach of contract, unjust enrichment and fraud.[1] White's breach of contract and unjust enrichment claims arise out of the fact that White paid to Fishering in excess of $55,000 for interior design services, and that White received at most approximately $11,000 worth of services and goods.

5. White's fraud claim, however, is different. In his fraud claim, White has alleged that Fishering knowingly submitted to White a fraudulent and forged invoice from Walter E. Smithe in order to deceive White into paying Fishering monies that were not due. Specifically, Fishering submitted to White an invoice stating that, on October 4, 2006, she had written a check to Walter E. Smithe in the amount of $15,301.10, when in fact she had written a check for $6,908. (Exhibit 1, ¶¶ 6-9). In addition, the total amount of the invoice was altered to show a great total amount than was charged by Walter E. Smithe for the order. The fact that the invoice was fraudulent and forged has been confirmed by Walter E. Smithe. (*Id.* at ¶ 8).

6. On October 18, 2006, White wrote a check to Fishering in the amount of $17,301.10. (*Id.* at ¶ 7). That amount included the $15,301.10 that was represented to White as having been paid by Fishering to Walter E. Smithe, as well as $2,000 that Fishering had invoiced White for her

---

[1] Fishering has answered all three counts of White's counterclaim, thereby admitting that each claim state a viable cause of action.

purported services. Fishering deposited White's $17,301.10 check on October 20, 2006. (Exhibit 2).

7. Despite the fact that Fishering had fraudulently induced White to pay to her $15,301.10, when in fact Fishering had written a check to Walter E. Smithe for only $6,908, Fishering's $6,908 check to Walter E. Smithe bounced. (Exhibit 3). Of course, had Fishering used White's $17,301.10 only for proper purposes relating to White's project, the check written to Walter E. Smithe could not have bounced. White's payment of $17,301.10 to Fishering easily covered the $6,908 check that Fishering wrote to Walter E. Smithe.

8. However, it is undisputed that this did not occur. What is clear is that Fishering did not use White's money for the goods she purportedly bought on his behalf. Instead, Fishering used the money for some other unknown purposes. This would explain why she misrepresented to White the amount of the check that she had written to Walter E. Smithe. Fishering needed monies for some other purposes, and therefore she had White write a check in an amount greater than she had paid to Walter E. Smithe so that she could use the additional monies for those other purposes.

9. Accordingly, White sought discovery from Fishering to determine what those other purposes entailed. Specifically, White sought all bank account records and credit card statements of Fishering and/or her business from October 2006, to the present. (*See* White's First Request to Produce Documents, attached hereto as Exhibit 4, ¶¶ 4-5). These documents are extremely critical and relevant to determining what Fishering did with the monies that White paid to her in October 2006.

10. Furthermore, these documents are relevant to the issue of what happened to the other monies that White paid to Fishering. In total, White paid to Fishering in excess of $55,000.

However, White received only $11,000 of goods and services. Once again, White is entitled to discovery to determine what Fishering did with the monies that he paid to her.

11. Nonetheless, Fishering has refused to produce responsive documents. With regard to White's request for bank statements, Fishering has refused to produce any documents on the basis that White's request is "overbroad and not reasonably calculated to lead to the discovery of admissible evidence." (*See* Plaintiff's Response to White's First Request to Produce Documents, attached hereto as Exhibit 5, ¶ 4).

12. As to White's request for credit card statements, Fishering likewise objected to the request as "overbroad and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.* at ¶ 5). Fishering did agree to produce certain entries on specific credit card statements that purport to reflect transactions relating to White's project. However, Fishering refused to produce any entry on any credit card statement that she contends are unrelated to White's project. (Exhibit 6). Of course, it is precisely the entries that Fishering has refused to produce that are necessary to determine what Fishering did with White's money.

13. It is black letter law that the Federal Rule of Civil Procedure contemplate liberal discovery, and that "relevancy" under Rule 26 is extremely broad. *Stallings v. Union Pacific Rwy. Co.*, No. 01 C 1056, 2003 WL 21317297, at *6 (N.D. Ill. June 6, 2003). Rule 26(b) states that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." FED. R. CIV. P. 26(b).

14. Relevance is broadly defined to include not only what is admissible at trial, but also that which leads to admissible evidence. *Id.* The district court is vested with broad discretion in determining the scope of discovery, which is to be exercised mindful that the standard for discovery under Rule 26(b)(1) is "widely recognized as one that is necessarily broad in its scope in order to allow the parties essentially equal access to the operative facts." *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1021 (N.D. Ill. 2000).

15. Here, there simply is no question that, under the broad federal discovery standards, Fishering's bank records and credit card statements are relevant to White's claims against Fishering. Stated simply, White is entitled to know what Fishering did with the monies that he paid her, particularly in light of the fraud claim that White has alleged against Fishering.

16. Pursuant to Rule 37.2, White attempted to resolve this issue without the intervention of the Court. As part of his attempt to resolve the issue, White agreed to limit the time period of the requests from October 2006 through the date Fishering filed her complaint. (Exhibit 7). However, Fishering's counsel refused to produce documents based upon the requests as amended, and otherwise asserted that Fishering is standing by her objections. (Exhibit 8).

17. On July 14, 2008, undersigned counsel for White made one last attempt to resolve the issue. Undersigned counsel spoke with Charles McElvenny, one of the attorneys for Fishering, to determine whether Fishering would reconsider her position. However, Mr. McElvenny again reiterated that Fishering is standing by her blanket objections, and will not produce any bank account records or additional credit card statements. Thus, White was forced to bring the current motion before the Court.

WHEREFORE, Defendant Eugene White respectfully requests that this Court enter an order compelling Fishering to produce all documents responsive to Requests Nos. 4 and 5 of White's First Request to Produce Documents, and granting to White any and all further relief the Court deems fair and just.

Dated:   July 15, 2008

Respectfully submitted,

Eugene White

/s/Martin J. O'Hara
Martin J. O'Hara, #6229971
Attorney for Defendant
Quinlan & Carroll, Ltd.
30 N. LaSalle Street, Suite 2900
Chicago, IL 60602
phone: (312) 263-0900
fax: (312) 263-5013
e-mail: mohara@qclaw.com