EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA K. FISHERING,                          )
                                            )
                    Plaintiff,              )
                                            )       Judge Der-Yeghiayan
          v.                                )   ·   Case No. 07 C 6650
                                            )
CITY OF CHICAGO, JAMES SPRATTE, )               Magistrate Judge Nolan
TERANCE NALLS and EUGENE WHITE, )
                                            )       **Defendant/Counterplaintiff**
                    Defendants.             )       **Demands a Jury Trial**

### DEFENDANT EUGENE WHITE'S ANSWER TO COMPLAINT
### AND COUNTERCLAIM AGAINST LISA FISHERING

Defendant, Eugene White ("White"), by and through his attorneys, Quinlan & Carroll, Ltd.,

and for his answer to Plaintiff Lisa K. Fishering's complaint, states as follows:

### I.   Jurisdiction & Venue

1.      This action arises under 42 U.S.C. §1983 and §1988 and the Fourth and Fourteenth
Amendments to the United States Constitution. Jurisdiction is invoked under 28 U.S.C. §1331 with
respect to Plaintiff's federal claims in Count I. Supplemental Jurisdiction is invoked pursuant to 28
U.S.C. 1367(a) with respect to the State claims in Counts II and III.

**ANSWER:** White admits the allegations contained in Paragraph 1.

2.      The events complained of herein occurred in Chicago, Cook County, Illinois and
therefore venue lies in the Northern District of Illinois pursuant to 28 U.S.C. 1391(b).

**ANSWER:** White admits the allegations contained in Paragraph 2.

### II.   Parties

3.      Plaintiff Lisa Fishering resides in Chicago, Cook County, Illinois with her daughter.
She is an interior designer and owns and operates a business known as Whizbang Incorporated, also
located in Chicago, Cook County, Illinois.

Case 1:07-cv-06650 Document 40 Filed 04/16/2008 Page 2 of 14

**ANSWER:** White lacks sufficient knowledge to either admit or deny the allegations contained in the first sentence of Paragraph 3. White admits that Fishering is an interior designer and that she purports to operate a business known as Whizbang Incorporated. Answering further, White states that Whizbang Incorporated is not licensed to do business in Illinois.

4. Defendant City of Chicago is a municipal corporation in the State of Illinois that employs a law enforcement unit identified as the Chicago Police Department (Department) and is responsible for the employment, training, and supervising of Chicago Police officers including the individual police officers in this action, James Spratte (Spratte) and Terance Nalls (Nalls).

**ANSWER:** White lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 4.

5. Defendant James Spratte (Spratte) is, and at all times material herein was a duly appointed police officer in the Chicago Police Department and, at all times material herein, acted under pretense and color of law and in his official capacity.

**ANSWER:** White lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 5.

6. Defendant Terance Nalls (Nalls) is, and at all times material herein was, a duly appointed police officer in the Chicago Police Department, and at all times material herein, acted under pretense and color of law and in his official capacity.

**ANSWER:** White lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 6.

7. Defendant Eugene White (Eugene) resides in Chicago, Cook County, Illinois. He is married to Michelle (Michelle) White (together referred to herein as the Whites).

**ANSWER:** White admits the allegations contained in Paragraph 7.

8. Defendant Spratte is Michelle's uncle or has an otherwise close personal relationship with her.

**ANSWER:** White denies the allegations contained in Paragraph 8.

## Background

9.      In or about 2006, Eugene and Michelle hired plaintiff to provide interior design services for a home they were rehabbing in Chicago.  Thereafter, a dispute arose between plaintiff and the Whites regarding plaintiff's services.

**ANSWER:** White admits that in or about 2006, he hired Plaintiff to provide interior design services for his home.  White denies that "a dispute arose."  White states that he paid Plaintiff approximately $55,000 for her services, and he received at most approximately $11,000 in goods and services.  Plaintiff has refused to return the money as of today.  Answering further, White states that Fishering submitted a forged invoice to him from Walter E. Smithe to fraudulently induce him to pay monies to her.

10.      On or about August 17, 2007, defendant Spratte came to plaintiff's home.  Plaintiff was not at home, but her 18 year old daughter Meret was present.  Spratte identified himself as a Chicago Police detective and displayed his badge.  He told Meret that he "had business" with her mother and that she should call him at the cell number he provided.

**ANSWER:**  White lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 10.

11.      Within an hour of Spratte's visit, plaintiff arrived at home and was told by her daughter that a detective wanted to talk with her.  Plaintiff then called Spratte at the cell phone number he had left.

**ANSWER:**  White lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 11.

12.      During plaintiff's call with Spratte, he told her he was a Chicago Police detective and Michelle's uncle; that he had raised Michelle and was calling on her behalf because plaintiff owed her money.  He told plaintiff that if she did not "make things right" with the Whites, he would "walk Eugene through the criminal process" and see to it that plaintiff was arrested.

**ANSWER:**  White lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 12.

253951v2

3

Case 1:07-cv-06650 Document 40    Filed 04/16/2008    Page 4 of 14

13.    On or about September 17, 2007, Eugene left a voicemail message with a business associate of plaintiff stating that plaintiff had taken $45,000 and "skipped town" and that a warrant had been issued for her arrest on fraud charges.

**ANSWER:** White admits the allegations contained in Paragraph 13, and further states that everything he said in the voicemail message was true.

14.    On or about September 19, 2007, defendant Nalls left a voicemail message with the same business associate of plaintiff identifying himself as a detective and asking that plaintiff call him.

**ANSWER:**  White lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 14.

15.    Later that day, after plaintiff heard Nalls' voicemail message, plaintiff and the Whites exchanged emails.  In their email to plaintiff of September 19, 2007 at 7:35 p.m., the Whites state in part:

> "We want our money back.  Give it to us and this will all be over.  You never even called us about this – before or after any visit from the police.  Find our money and give it to us – it is the right thing to do, and it will make your life much simpler again.  I wish you had not ignored this for the last several months – you could have solved the problem long ago.  This is a significant problem – I'm sorry you don't see it as one – the police have no problem seeing that this is a serious crime."

**ANSWER:** White lacks sufficient information to either admit or deny when and if Fishering heard a voicemail from Nalls.  White admits that emails were exchanged on September 19, 2007.

White admits that his wife Michelle sent the email that is referenced in Paragraph 15.

16.    On or about September 26, 2007, defendant Nalls informed plaintiff's counsel that a felony warrant had been issued for plaintiff.  Thereafter, on or about October 2, 2007, plaintiff and her counsel met with defendant Nalls at Area 2 Financial Crimes headquarters of the Chicago Police Department at 727 East 111th Street in Chicago.  At that time and place, plaintiff was placed under arrest by Nalls for felony theft by deception and held in a jail cell for the next 6 hours.  She was then released without being charged.

**ANSWER:**  White lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 16.

### Count I – Unlawful Arrest & Imprisonment
### Spratte, Nalls & the City of Chicago

White makes no response to the allegations of Count I, as the allegations of Count I are not directed toward White.

### Count II - Intentional Infliction of Emotional Distress – Spratte & Nalls

White makes no response to the allegations of Count II, as the allegations of Count II are not directed toward White.

### Count III – Defamation per se – Eugene White

27. Plaintiff realleges paragraphs 1-26 above.

**ANSWER:** White incorporates by reference and reasserts, as though fully set forth herein, his Answers to Paragraphs 1 through 26 as his Answer to Paragraph 27 of Count III.

28. White's voicemail message as described in paragraph 13 above, falsely, intentionally, and maliciously portrayed plaintiff as having committed a crime and was therefore defamatory per se.

**ANSWER:** White denies the allegations contained in Paragraph 28, and states further that everything stated in the voicemail message was true.

29. As a direct and proximate result of White's conduct as described above, plaintiff suffered substantial damage, including but not limited to personal humiliation and mental anguish.

**ANSWER:** White denies the allegations contained in Paragraph 29.

WHEREFORE, White respectfully requests that this Honorable Court enter judgment in his favor and against Plaintiff on Count III, and order any and all other appropriate relief.

## COUNTERCLAIM

Defendant-Counterplaintiff Eugene White ("White"), for his counterclaim against Plaintiff-Counterdefendant, Lisa K. Fishering ("Fishering"), states as follows:

1.      White resides in Chicago, Cook County, Illinois at 10609 S. Fairfield.   White purchased the home at that location with his wife in the Summer of 2006.

2.      On information and belief, Fishering resides in Chicago, Cook County, Illinois. Fishering purports to operate an interior design company named Whizbang Incorporated. However, Whizbang Incorporated is not a legal entity as it is not licensed to do business in Illinois.

3.      In 2006, White retained a contractor, Joe Bell, to perform extensive renovations on the home that he had purchased.  Bell recommended to White that he retain Fishering to provide interior decoration services for his new home.

4.      Thereafter, White met Fishering and hired her to provide interior decorating services for his home.  Although no written contract was executed between White and Fishering, the parties agreed that Fishering would assist White in decorating his new home, and that Fishering would be paid a per hour service fee for the work that she performed.  Fishering was not to be paid any monies for the furniture and accessories that were purchased for the house, but rather White would pay the actual cost of all such furniture and accessories.

5.      From October 18, 2006 through May 3, 2007, White wrote five checks to Fishering's purported company, Whizbang Incorporated, in the total amount of $55,535.51. Each of the five checks were cashed by Fishering.  The checks were written based primarily upon invoices that Fishering provided to White purportedly evidencing furniture that Fishering had ordered for White's home.

253951v2

6

6.      For example, in October 2006, Fishering provided an invoice to White that purported to be from Walter E. Smithe.  (Exhibit A).  The invoice contained a date of October 4, 2006, and purported to identify merchandise that Fishering had ordered for White from Walter E. Smithe.  The invoice also appeared to reflect that after the sales tax was applied and a trade discount was granted, Fishering had paid $15,301.10 to Walter E. Smithe.  Fishering provided the invoice to White in order to induce him to pay to her the amount of money that she purportedly paid to Walter E. Smithe for the furniture.

7.      In reliance of the invoice, on October 18, 2006, White wrote a check to Fishering's company in the amount of $17,301.10.  This amount reflected the amount contained in the purported Walter E. Smithe invoice that Fishering had provided to White, as well as a payment of $2,000 to Fishering as her fee for the work that she had performed for White.

8.      The October 4, 2006 invoice was a fraud.  Walter E. Smithe has confirmed that it did not issue the invoice, and that it never received payment of $15,301.10 from Fishering.  The actual invoice issued to Fishering by Walter E. Smithe provided that the total amount of the purchasers was $13,816.41, and that Fishering had paid only $6,908.  (Exhibit B).

9.      Fishering manufactured and forged the invoice in order to fraudulently induce White to pay money to her, which he did in reliance on the forged invoice that had been submitted.

10.      Subsequent to White's payment of the fraudulent invoice, Fishering continued to invoice White for furniture that she purportedly purchased on his behalf.  As stated, in total White paid $55,535.51 to Fishering.

11.      Despite the payment of in excess of $55,000 to Fishering, White has received only two chairs valued at $4,041.24, one lamp valued at $225, and plumbing fixtures valued at $5,156.

Even taking into consideration the $2,000 service fee charged by Fishering, in total White has received furniture and services valued at $11,422.24. Thus, White has paid to Fishering at least $44,113.27 for which he has received no goods or services.

12.    White has made repeated demands since the summer of 2007 that Fishering provide the furniture that he paid for, or return the $44,113.27 to him. However, Fishering has refused to do either.

## COUNT I
### Breach of Contract

13.    White hereby realleges Paragraphs 1 through 11 of his Counterclaim as though fully set forth herein as Paragraph 12.

14.    White and Fishering entered into an oral contract for Fishering to provide interior decorating services for White's home.

15.    Pursuant to the oral contract, White paid to Fishering $55,535.51 for furniture and services. Fishering has provided furniture and services with a value of only $11,422.24.

16.    Fishering has breached the parties' contract by failing to provide the furniture for which she billed White, and for which White has paid.

17.    White has been damaged by Fishering's failure to provide the furniture for which she billed him, and for which he has paid. White has been damaged in the amount of approximately $44,113.27.

WHEREFORE, Counterplaintiff Eugene White respectfully requests that this Court enter judgment in his favor and:

   a.    award White damages in the amount of $44,113.27, plus interest, costs, and expenses;

253951v2

8

     b.     order such other relief as this Court deems appropriate.

**COUNT II**
**Unjust Enrichment**

18.     White hereby realleges Paragraphs 1 through 16 of his Counterclaim as though fully set forth herein as Paragraph 17.

19.     White paid to Fishering $55,535.51. Fishering provided furniture and services in the amount of $11,422.24.

20.     Fishering has retained $44,113.27 of White's money for which she provided no goods or services. It would violate fundamental principles of equity and good conscience for Fishering to retain the $44,113.27.

WHEREFORE, Counterplaintiff Eugene White respectfully requests that this Court enter judgment in his favor and:

     a.     award White damages in the amount of $44,113.27, plus interest, costs, and expenses;

     b.     award White punitive damages in the amount of $1 million; and

     c.     order such other relief as this Court deems appropriate.

**COUNT III**
**Fraud**

21.     White hereby realleges Paragraphs 1 through 19 of his Counterclaim as though fully set forth herein as Paragraph 20.

22.     Fishering submitted at least one forged invoice to White that contained false information, including a representation that Fishering had paid $15,301.10 to Walter E. Smithe.

23.     Fishering knew that the invoice contained false information.

24.     Fishering submitted the invoice to White to induce him to pay monies to her.

25.     White relied on the accuracy of the invoice and made a payment to Fishering that included the amount set forth on the false invoice.

26.     White was damaged as a result of his reliance on the false invoice based upon his payment of the amount set forth on the invoice.

WHEREFORE, Counterplaintiff Eugene White respectfully requests that this Court enter judgment in his favor and:

      a.     award White damages in the amount of $44,113.27, plus interest, costs, and expenses;

      b.     award White punitive damages in the amount of $1 million; and

      c.     order such other relief as this Court deems appropriate.

Dated:  April 16, 2008          Respectfully submitted,

                                 Eugene White

                                 /s/Martin J. O'Hara
                                 Martin J. O'Hara, #6229971
                                 Attorney for Defendant
                                 Quinlan & Carroll, Ltd.
                                 30 N. LaSalle Street, Suite 2900
                                 Chicago, IL  60602
                                 phone:  (312) 263-0900
                                 fax:  (312) 263-5013
                                 e-mail:  mohara@qclaw.com

# EXHIBIT A

061370216

\*\*\*CONTINUED\*\*\*

SALES
ORDER

DATE

10/04/06

SOLD TO:
   WHIZBANG, INC.
   1223 NORTH HOYNE
   CHICAGO, IL 60614

SHIP TO:
   WHIZBANG, INC.
   1223 NORTH HOYNE
   CHICAGO, IL 60614

Home: 773 934-4960

| TERMS | DESIGNER | CLIENT # | STORE |
|---|---|---|---|
| PAYMENT | STEVE HALL | 061370216 | 06 |

SHIP VIA        REMARKS

10/04/06 15:02:31

D - DELIVERY

================================================================

FAKE OR ALTERED INVOICE.

10/04/06

| | |
|---|---|
| Merchandise: | 15597.45 |
| Sales Tax: | 1403.77 |
| TOTAL ORDER: | 17001.22 |
| Trade Disc. 10%: | 1700.12 |
| Amount Paid: | 15301.10 |
| CHECK: 10/04/06 | 15301.10 |

This Agreement includes the terms and conditions on the reverse side and Smiths's finish, price and all options of the items purchased as described above and on the Client section.
carry and Care Guide (provided separately), and is subject to approval by Smiths's main
a. All other prior oral and written understandings and agreements between the parties are c. part's signature or verbal authorization of payment of deposit or balance due upon deliv-

# EXHIBIT B

10/02/2007  13:55  6302858022                WESMITHE                    PAGE  07/07



Walter E.
SMITHE
50 Years
Custom Furniture

***CONTINUED***

| | 061370216 |
|---|---|
| | SALES ORDER |
| DATE | |
| | 10/04/06 |

SOLD TO:
    WHIZBANG, INC.
    1223 NORTH HOYNE
    CHICAGO, IL 60614

SHIP TO:
    WHIZBANG, INC.
    1223 NORTH HOYNE
    CHICAGO, IL 60614

Home: 773 934-4960

| TERMS | DESIGNER | CLIENT # | STORE |
|---|---|---|---|
| PAYMENT ON DELIVE | STEVE HALL | 061370216 | 06 |

| SHIP VIA | REMARKS |
|---|---|
| | 10/04/06-15-02-31 |

D - DELIVERY

LINE
NO.

12  D Model: DK242245               2   0   333.00    666.00
    DREXEL FABRIC
    Normal shipping time: 14WKS UPH/4-12 CSGD
    Times vary and are not guaranteed
13  D Model: DK789825-F             1   0   152.10    152.10
    DREXEL FABRIC
    fabric:DK7898-25
    Normal shipping time: 14WKS UPH/4-12 CSGD
    Times vary and are not guaranteed

                Merchandise:              13493.70
                Sales Tax:                 1214.44
                TOTAL ORDER:              14708.14
                Amount Paid:
                   CHECK:          10/04/06    6908.00

Amount Due     7800.14