IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |  |
|---|---|---|
| LISA K. FISHERING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6650 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant City of Chicago's ("City") motion for summary judgment. This matter is also before the court on Defendant James Spratte's ("Spratte") and Defendant Terance Nalls' ("Nalls") (collectively referred to as "Defendant Officers") motion for summary judgment. In addition, this matter is before the court on Defendant Eugene White's ("White") motion for summary judgment and Plaintiff Lisa K. Fishering's ("Fishering") partial motion for summary judgment on the claim brought against White in Count III. For the reasons stated below, we grant the City's motion for summary judgment, and we grant Defendant Officers' motion for summary judgment on the Section 1983 claims. We strike as moot all remaining motions. We also dismiss all remaining state claims

1

without prejudice.

## BACKGROUND

Fishering alleges that she is an interior designer. Fishering contends that in 2006, White and his wife hired Fishering to provide interior design services on a home that the Whites were "rehabbing." (Compl. Par. 9). According to Fishering, a dispute arose concerning her services for the Whites. Subsequently, on August 17, 2007, Spratte, a police officer for the City, allegedly came to Fishering's home to speak with her. Fishering was allegedly absent and Spratte left a message for Fishering to call him. Fishering claims that when she called Spratte, he told her that he was the uncle of White's wife and he was calling on her behalf because Fishering owed the Whites money. Spratte allegedly threatened Fishering that if she did not "make things right," she would be arrested. (Compl. Par. 12).

On September 17, 2007, White allegedly left a voicemail with a business associate of Fishering ("Associate"), indicating that Fishering had taken $45,000 and "skipped town" and that a warrant had been issued for her arrest. (Compl. Par. 13). Fishering alleges that on September 19, 2007, Nalls left a voicemail message with the Associate, identifying himself as a detective. Fishering alleges that later on September 19, 2007, Fishering and the Whites exchanged emails and the Whites

2

demanded that Fishering return their money. On September 26, 2007, Fishering's counsel was allegedly informed that an arrest warrant had been issued for Fishering and Fishering turned herself in to the police. Fishering was allegedly held for six hours and then released without being charged.

Fishering brought the instant action and includes in her complaint false arrest and false imprisonment claims brought against Spratte and Nalls, (Count I), a *Monell* claim brought against the City (Count I), an intentional infliction of emotional distress claim brought against Spratte and Nalls (Count II), and a defamation *per se* claim brought against White (Count III). Defendants now move for summary judgment and Fishering moves for partial summary judgment on Count III brought against White.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate

3

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment the court must draw inferences "in favor of the party against whom the motion under consideration was made." *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 500 (7th Cir.

2008).

## DISCUSSION

I. Section 1983 Claims brought against Defendant Officers

Defendant Officers argue that there is not sufficient evidence to indicate that they are liable under Section 1983.

### A. Fishering's General Objections to the Statement of material facts

At the beginning of Fishering's response to Defendant Officers' statement of material facts, Fishering indicates that she has "general objections" to the facts. (R OSF 1). Fishering contends that the facts are improper under Local Rule 56.1 since they are "compound, argumentative, and/or improper characterizations of deposition testimony." (R OSF 1). Fishering's objections are improper since the objections avoid providing responses to Defendant Officers' statement of material facts and thus are completely contrary to the requirements of Local Rule 56.1. The Seventh Circuit has stated that "a district court has broad discretion to require strict compliance with Local Rule 56.1." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008). Local Rule 56.1 requires a non-movant to provide a response to a statement of material facts and such facts are deemed

"admitted unless controverted by the statement of the opposing party." LR 56.1. In addition, any denial of material facts must be accompanied by "specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1. Absent such citations to portions of the record, a denial is improper and the fact is deemed undisputed. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003).

The paragraphs in Defendant Officers' statement of material facts are not improperly compound paragraphs simply because they contain more than one fact or one sentence. Local Rule 56.1 merely specifies that statements should include "short numbered paragraphs." LR 56.1. The local rule does not restrict a paragraph to one fact or one sentence. In fact, a statement of material facts that presents one fact at a time per paragraph would not be an efficient manner in which to present a statement of material facts and would not be consistent with Local Rule 56.1. Nor can Fishering refuse to answer the paragraphs presented by Defendant Officers by contending that they are argumentative. All of the paragraphs presented by Defendant Officers can be answered in the affirmative or the negative. We will give an example to illustrate this point. In Paragraph 45 of Defendant Officers' statement of material facts, Defendant Officers assert that "Detective Nalls, a financial crimes detective received the general offense report pursuant to a random assignment within

one week of August 23, 2007." (OSF Par. 45). Fishering can either admit that fact or deny that fact and cite to a portion of the record that contradicts that fact and supports a denial. LR 56.1. Instead, Fishering only vaguely responds: "Objection; compound and argumentative." (R OSF Par. 45). Whether Nalls received the general offense report in the manner described in Paragraph 45 is either true or false and does not involve an argumentative statement. Defendant Officers further assert in Paragraphs 45 that "[p]rior to the filing of this lawsuit, Spratte and Detective Nalls had never met, did not know of each other, and had never spoken to each other." (OSF Par. 45). Such facts are not merely alleged by Defendant Officers in a vacuum. Defendant Officers cite to the depositions of Nalls and Spratte, which support such facts. (OSF Par. 45). Such facts are either true or false and Fishering could and should have either admitted or denied such facts. If Fishering is aware of evidence showing that Spratte and Nalls talked together prior to this litigation, Fishering can point to such evidence. Instead, Fishering avoided providing any response with her meritless vague objections. (R OSF Par. 45); *See Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1).

Fishering also argues that some of Defendant Officers' facts are contrary to

deposition testimony. If Fishering believed that to be true, she could deny such facts and cite to the conflicting testimony to support her denial. It is not a valid basis to avoid providing a definitive response. Thus, Fishering's "general objections," (R OSF 1), to the statement of material facts are without merit and do not provide Fishering with a basis to avoid providing the responses required under Local Rule 56.1. We also note that Fishering had previously moved to strike Defendant Officers' statement of material facts, which we denied. Fishering complained in that motion that some paragraphs contained assertions such as what Spratte testified to at his deposition. (Mot. Str. 2). However, such assertions do not require Fishering to admit the underlying facts. All Fishering needed to do was admit or deny that Spratte testified as such. Fishering offers no justification for a blanket exclusion of Defendant Officers' statement of material facts.

B. Section 1983 claims Brought Against Nalls

Defendant Officers contend that Nalls had probable cause to conclude that Fishering had committed the crimes of theft and forgery. If an arresting officer had probable cause "to believe that the person he arrested was involved in criminal activity," "the existence of probable cause is an absolute defense to a § 1983 false-arrest claim." *Montano v. City of Chicago*, 535 F.3d 558, 568 (7th Cir. 2008);

*Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 679-80 (7th Cir. 2007). In order to have probable cause, an officer must have "more than a bare suspicion of criminal activity," but the officer is not required to have "evidence sufficient to support a conviction." *Holmes*, 511 F.3d at 679-80. In assessing whether an officer had probable cause, an objective standard is utilized, under which "a court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Id.* (stating that "[i]n making that assessment, the court must consider the facts as they reasonably appeared to the arresting officer, seeing what he saw, hearing what he heard, and so forth").

In the instant action, Defendant Officers contend that Nalls relied upon information provided to him by White, the purported victim. (OSF Par. 46-50). Nalls could have reasonably relied upon the statements of such a victim, and Fishering has not shown that such statements should have been deemed incredible by Nalls. *See id.* at 680 (stating that "[i]n making a decision to arrest someone for criminal conduct that he did not witness, a police officer may rely on information provided to him by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth"). Fishering admits that Nalls contacted White and had White bring documents to the police station that supported White's claims. (R OSF Par. 46).

9

Although Fishering argues that it is unclear what was the exact number of pages of documents received by Nalls from White, Fishering does not dispute that White did in fact meet with Nalls and did provide Nalls with documents that White believed supported his claims. (R OSF Par. 47). The deposition testimony cited by Defendant Officers in fact supports those facts, and Fishering has not identified any portion of the record that contradicts such facts. (OSF Par. 47). Fishering also criticizes Nalls for allegedly destroying the file containing a record of the documents and information that White provided to Nalls. (Ans. OSJ 1). However, Defendant Officers have cited to deposition testimony to support their positions, and Fishering points to no legal precedent that would bar Nalls' and White's testimony as to such facts without also presenting a written file documenting such matters.

In addition to the statements provided by the victim, Nalls also contends that he examined documents from Walter E. Smithe Custom Furniture Store ("WES") that White stated did not match up with the explanation Fishering had given to White. (OSF Par. 51). Fishering again attempts to avoid admitting such facts with ambiguous responses, (R OSF Par. 51), but to the extent that Fishering's response could be deemed a denial, it is not a proper denial due to the lack of a citation to evidence in the record and the facts are therefore deemed undisputed pursuant to Local Rule 56.1. *Dent*, 2003 WL 22025008, at *1; (R OSF Par. 51). Defendant

10

Officers further contend that Nalls contacted WES and discussed the document with a WES employee, which led him to further suspect that Fishering had committed a crime. (OSF Par. 51-52). Defendant Officers contend that the WES employee confirmed, for example, that the figures on the WES document did not match up with Fishering's explanation and that the invoice presented to White by Fishering was not the original invoice, but had been altered. (OSF Par. 51). Fishering complains that Nalls did not make a record of who he spoke to at WES. (Ans OSJ 1). However, Fishering does not point to any legal precedent that would bar Nalls from testifying that he spoke to a WES employee unless Nalls could produce a written record indicating the name of the employee. Finally, Defendant Officers contend that Nalls examined correspondence between Fishering and White in which Fishering admitted that the repairs were not completed and failed to provide an explanation for the failure. (OSF Par. 50). Thus, Nalls had the statements of the victim and documentary evidence to support his suspicion. Nalls also spoke with WES employees and the correspondence between Fishering and White further confirmed Nalls' suspicions. Nalls was also entitled to rely upon his training and experience as a financial crimes detective in assessing whether Fishering had committed a crime based on the evidence. *Holmes*, 511 F.3d at 679. Defendant Officers contend that Nalls prepared a report based on his interviews with White, supporting documents

and Nalls' conversation with the WES employee. (OSF Par. 50). Fishering denies that fact, but fails to provide any citation to evidence in the record to support a denial and fails to point to any evidence showing that Nalls based his report on something else. (R OSF Par. 50).

Fishering also criticizes Nalls for relying on the evidence before him and being involved in her arrest when she had not committed any crime and when she was released without any charges being filed against her. (Ans. OSJ 3). However, whether or not the evidence possessed by Nalls prior to Fishering's arrest was accurate evidence, whether it was sufficient to prove that Fishering committed a crime, and whether Fishering was ultimately convicted of any crime is not at issue at this juncture. As indicated above, Nalls only needed probable cause to conclude that Fishering had committed a crime as viewed from an objective viewpoint of an officer in Nalls' position prior to the arrest. *Holmes*, 511 F.3d at 679-80. Nalls did not need evidence conclusively showing that Fishering committed a crime, and we cannot consider in hindsight that Fishering was not ultimately charged with a crime. *Id.* The undisputed facts clearly show that Nalls had sufficient evidence for probable cause. Therefore, we grant Nalls' motion for summary judgment on the Section 1983 false arrest claim brought against Nalls. Since the false imprisonment claim brought against Nalls is premised on the alleged false arrest, we also grant Nalls'

motion for summary judgment on the Section 1983 false imprisonment claim brought against Nalls.

C. Section 1983 Claims Brought Against Spratte

Spratte contends that he cannot be held liable under Section 1983. First, as explained above, the undisputed facts show that Nalls had probable cause for the arrest. Thus, there is no constitutional violation for false arrest or false imprisonment and the Section 1983 claims brought against Spratte fall as well. Second, Spratte argues that even if Nalls lacked probable cause, Spratte did not have personal involvement in the alleged constitutional deprivation. A defendant can only be found liable under Section 1983 if the "'defendant was personally responsible for the deprivation of a constitutional right.'" *Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006)(quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Spratte acknowledges that he is a friend of the Whites and that Spratte initially went to speak to Fishering about the dispute with White. However, Spratte contends that he did not go with White to the police station to file a criminal complaint against Fishering and that Spratte did not have any involvement in the arrest of Fishering. Fishering could have admitted or denied such facts, such as Spratte's contention that he did not accompany White to the police station, but Fishering did neither. (R OSF Par. 44).

Instead, Fishering again provides an ambiguous response that reads: "Objection; materiality, compound, and argumentative." (R OSF Par. 44). In light of the evasive response, such facts are deemed undisputed under Local Rule 56.1. *Jankovich*, 2003 WL 260714, at *5. It is also important to note that Spratte, on the other hand, has properly complied with Local Rule 56.1 and has provided citations to portions of the record that support his contentions. (OSF Par. 44). Fishering's failure to find any contradicting evidence cannot be concealed with non-responsive answers. Spratte also shows that he had no involvement in the arrest since "[p]rior to the filing of th[e] lawsuit, Spratte and Detective Nalls had never met, did not know of each other, and had never spoke to each other." (OSF Par. 45). Fishering does not point to any evidence that would contradict such an assertion. (R OSF Par. 45). Fishering merely provides a non-responsive answer and the fact is deemed undisputed pursuant to Local Rule 56.1. LR 56.1. Thus, based on the undisputed evidence, even if Nalls had lacked probable cause for the arrest, Spratte did not have sufficient personal involvement in the arrest to be liable under Section 1983. Therefore, we grant Spratte's motion for summary judgment on the Section 1983 false arrest claim brought against Spratte. Since the false imprisonment claim brought against Spratte is premised on the alleged false arrest, we also grant Spratte's motion for summary judgment on the Section 1983 false imprisonment claim brought against Spratte.

D.  Qualified Immunity

Defendant Officers also contend that they are protected from liability based on qualified immunity. Government officials are protected by qualified immunity "from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Viilo v. Eyre*, 547 F.3d 707, 709-10 (7th Cir. 2008)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity from civil liability, the court must consider: (1) "whether the facts alleged, taken in the light most favorable to the plaintiff, amount to a constitutional violation," and (2) "whether the violated right was clearly established," which "is determined by looking at whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008); *see also Akande v. Grounds*, 2009 WL 291186, at *5 n.3 (7th Cir. 2009)(stating that in *Pearson v. Callahan,* ---U.S. ----, --- S.Ct. ----, 2009 WL 159429, *9 (Jan. 21, 2009), "[t]he Supreme Court has recently clarified that the *Saucier* sequence is not an inflexible requirement," but that "courts are still free to follow the *Saucier* protocol where, as here, it facilitates the expeditious disposition of a case").

In the instant action, as explained above, the undisputed facts indicate that

Nalls had probable cause to believe that Fishering had committed a crime. The undisputed facts also indicate that Spratte had probable cause to believe that Fishering had committed a crime. Also, the undisputed facts indicate that Spratte lacked personal involvement in the arrest. Thus, there are not facts in this case indicating a constitutional violation. Nor are there facts that would indicate that officers in the position of Nalls and Spratte would understand that they were violating any constitutional right clearly established under the law. Thus, Nalls and Spratte are also entitled to qualified immunity in this case.

II. Section 1983 *Monell* claim Brought Against the City

The City argues that Fishering has failed to point to sufficient evidence that would show that the City is liable under Section 1983 for the alleged misconduct. First, since Fishering has failed to point to sufficient evidence that shows an underlying constitutional violation by Defendant Officers, the City cannot be held liable under Section 1983. *See Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2006)(stating that a public entity cannot be liable under Section 1983 or *Monell* where no constitutional violation occurred). Second, the City argues that there is not sufficient evidence showing that any policy, practice or custom lead to the alleged constitutional deprivation at issue in this case. For a Section 1983 *Monell*

16

claim, a plaintiff must show that the alleged constitutional deprivation resulted from a "custom or policy established by the officials." *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). To make such a showing a plaintiff must point to: "'(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.'" *Id.* (quoting *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003).

Fishering asserts in her complaint that the City failed to properly train and supervise its officers and, thus, the alleged misconduct in this case has, informally become a policy and practice of the City. (Compl. Par. 23). The City correctly points out that Fishering, after receiving the City's motion for summary judgment on the *Monell* claim, changes her position, arguing that an express policy was behind the alleged misconduct in this case. The City correctly points out that Fishering has not sought leave to amend her complaint and any request would be untimely. However, we note that even though it was improper for Fishering to attempt to shift her positions after viewing the City's arguments for summary judgment, Fishering's current position lacks merit as well. Fishering now contends that the City has an

express "policy of authorizing arrest without probable cause through the mechanism of an investigative alert." (Ans. CSJ 2). Fishering contends that the City police can enter an investigative alert that allows an individual to be arrested with or without a review of a judge and with or without probable cause. (Ans. CSJ 2-3). First, as indicated above, in this case the undisputed facts show that there was probable cause to arrest Fishering. In addition, as the City points out, Fishering admits she was not picked up by City police officers that received the investigative alert for Fishering. As Fishering admits, she voluntarily appeared at the police station with counsel. (Ans. CSJ 8);(Ans. OSJ 3). Thus, the investigative alert did not involve any policy that effectuated Fishering's arrest. Fishering has failed to point to sufficient evidence that shows a City policy or practice resulted in a constitutional deprivation. Therefore, we grant the City's motion for summary judgment on the Section 1983 *Monell* claim.

III. Remaining State Claims

Having resolved the federal claims in this case, we must determine whether to continue to exercise supplemental jurisdiction over the remaining state claims. Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims.

*See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts"). The Seventh Circuit has stated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction" and that a court may retain jurisdiction where a statute of limitations would bar future suits, where "substantial federal judicial resources have already been expended on the resolution of the supplemental claims," and "where it is obvious how the claims should be decided." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). The Seventh Circuit has stated that, In exercising that discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). We have considered all of the pertinent factors and, as a matter of discretion, we decline to exercise supplemental jurisdiction over the remaining state law claims. Therefore, we strike as moot all remaining motions. We also dismiss all remaining state claims without prejudice.

## CONCLUSION

Based on the foregoing analysis, we grant Defendant Officers' motion for

summary judgment on the Section 1983 claims brought against Defendant Officers. We also grant the City's motion for summary judgment in its entirety. We strike as moot all remaining motions. We also dismiss all remaining state claims without prejudice.

                                                           _____
                                                           Samuel Der-Yeghiayan
                                                           United States District Court Judge


Dated:   February 18, 2009